JACK'S BEACH RESORT, INC., demandante y recurrida, *v.*
COMPAÑÍA DE TURISMO DE PUERTO RICO (PUERTO RICO
TOURIST DEVELOPMENT COMPANY), demandada y recu-
rrente.

*Número:* R-81-501 *Resuelto:* 18 de marzo de 1982

*José A. Fernández Paoli*, de *Martínez Álvarez, Fernández Paoli, Menéndez Monroig, Menéndez Cortada & Lefranc Romero*, abogado de la demandante y recurrida; *Luis E. López Correa* y *Carlos Santos Correa*, abogados de la demandada y recurrente.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

Mediante escritura Núm. 62 otorgada en San Juan el 19 septiembre, 1977 ante el notario Lic. Alfredo Martínez Álvarez, la corporación Jack's Beach Resort (en adelante "Jack's") vendió a la Compañía de Turismo de Puerto Rico el edificio multipisos que operaba como Hotel Flamboyán en la Avenida Las Nereidas, hoy Ashford, del Condado, por precio de $3,200,000 aplazado en su totalidad para pagarse en término de 20 años a partir del 1 enero, 1979 en 240 plazos mensuales, y representado por tres pagarés: el Núm. 1 por la cantidad principal de un millón setecientos mil dólares; Núm. 2, por un millón de dólares; y Núm. 3, por medio millón. En la misma escritura y en garantía de un principal total de $3,200,000 de estos pagarés, la compradora Turismo constituyó hipoteca a favor de su vendedora Jack's sobre el inmueble vendido. Los pagarés tienen como fecha común de vencimiento la de 1 diciembre, 1997 y se estipuló un interés de 4% anual para el caso de que las autoridades fiscales lo declarasen exento, y 8% anual si estuviesen los intereses sujetos al pago de contribución sobre ingresos. Quedaron aseguradas con la hipoteca partidas de costas, gastos y honorarios de abogado para un total de $320,000. La escritura tiene cláusula de aceleración que faculta al acreedor a dar por vencida la hipoteca y proceder a su ejecución en su totalidad en defecto de pago de un plazo mensual que transcribimos:

> Si los deudores no pagaren el principal e interés de cualquier plazo mensual quince (15) días después de notificados de la deficiencia por el acreedor, por correo certificado o personalmente, se tendrá por vencido el término de este

préstamo y facultado el acreedor para iniciar acción judicial en cobro del importe total del principal e intereses de la hipoteca más los que se devenguen hasta el pago total; y para el caso de defecto de pago por el deudor de la hipoteca aquí constituida o incumplimiento de sus condiciones estipuladas en esta escritura, el deudor conviene en devolver al vendedor el inmueble descrito con todas sus mejoras, accesorios y equipos de negocio, libre de cargas y gravámenes, para beneficio del vendedor, disponiéndose, sin embargo, que en caso de incumplimiento por el deudor que no sea falta de pago de capital e interés, tendrá éste treinta (30) días siguientes al aviso por correo certificado, antes de que pueda el acreedor dar por vencida la obligación y declarado el deudor en incumplimiento total.

En observancia del método acordado de requerimiento de pago por el acreedor cada mes, la deudora hipotecaria pagó 32 plazos, hasta que llegado el mes de septiembre de 1980 y requerida de pago el día 2, para efectuarlo en 15 días, Compañía de Turismo se excedió en 9 días al remitir el cheque correspondiente por $26,766.08 el 26 septiembre, 1980, y el 1 octubre de 1980 envió también a su acreedora el importe de ese mes. La acreedora recurrida no aceptó el pago, dio por vencida la hipoteca en su totalidad e inició la acción civil para su ejecución en que reclama un balance impagado de principal de $3,006,930.13, intereses al 8% anual desde 1 septiembre, 1980, y la suma de $320,000 de honorarios de abogado. Ya para el 4 septiembre, 1980 el Departamento de Hacienda había emitido opinión administrativa, dejando sin efecto una anterior, y en la cual declara exentos de contribución sobre ingresos los intereses de hipoteca que Turismo hasta el momento había pagado al tipo del 8% anual, por lo que la reducción al 4% según pactado en la escritura de constitución del crédito representaba para la acreedora un cobro de intereses en exceso montante a $332,741.68 que debía devolver o acreditar a su deudora Compañía de Turismo. Al contestar la demanda ésta opuso como defensa la de compensación y reconvino reclamando dicho exceso de intereses indebidos. Ya poco

antes había radicado demanda de consignación en cuyo procedimiento ha venido depositando el importe de los plazos en orden de vencimiento. El pleito llegó a juicio y en su día la sala de instancia estimó la demanda en todas sus partes, concediendo el importe total reclamado por principal de la hipoteca, así como los créditos accesorios de honorarios de abogado e intereses, y ordenó la venta del inmueble en subasta pública. Desestimó la reconvención de Turismo por el exceso de interés por no ser recobrable el pago de lo indebido por *error de derecho*, según determinado por jurisprudencia interpretativa del Art. 1795 (31 L.P.R.A. sec. 5121).

Al recurso de Turismo, el 30 diciembre, 1981 expedimos la siguiente orden:

> La parte demandante y recurrida tendrá de término hasta el 22 enero, 1982 para mostrar causa por la cual no deba revocarse la sentencia de instancia considerando entre las razones de improcedencia de la ejecución, la imprecisión documental relativa al vencimiento de los plazos; la razonabilidad o ausencia de ella en una cláusula de aceleración restringida a deficiencia de pago de una sola mensualidad; la esencial naturaleza de penalidad que reviste dicha cláusula de vencimiento acelerado que la sujeta a moderación por el Tribunal; y todos los demás aspectos relacionados con la exigibilidad de la obligación hipotecaria conducente a su ejecución.

El memorando de la recurrida Jack's y su escrito contestación a la citada orden, nos permite decidir a tenor de la Regla 50 del Reglamento.

 La cláusula de aceleración que ha dado lugar a la sentencia es por su naturaleza una cláusula penal de función coercitiva o de garantía adicional para el acreedor, pues hace más gravoso y de creciente onerosidad para el deudor el incumplimiento de la obligación. A pesar de que el Art. 1106 del Código Civil, 31 L.P.R.A. sec. 3131, declara que en las obligaciones con cláusula penal la pena substituirá la indemnización de daños y el abono de

intereses en caso de falta de cumplimiento, no siempre su fin es la liquidación anticipada de los daños. Tiene una función punitiva de violación del deber jurídico que da a la cláusula su otro nombre de "pena convencional" y que, rebasando el motivo de lucro en la obligación ordinaria, introduce un elemento de coerción y amenaza que apremia al deudor al cumplimiento. Es el efecto final de la cláusula penal lo que regula su existencia, y no el uso de determinado lenguaje en el texto del contrato. *R. C. Leasing Corp.* v. *Williams Int. Ltd.*, 103 D.P.R. 163, 169 (1974). ". . . Si bien para pactar una cláusula penal es necesario, naturalmente, una manifestación de voluntad, no exige que ésta sea necesariamente expresa, sino que puede resultar implícita e incluso tácita si por la *función* de lo pactado se descubre una auténtica finalidad penal. En lógica correspondencia con lo dicho, resulta igualmente, que la existencia de una cláusula penal no dependerá de la calificación de las partes contratantes, sino de la auténtica función que el pacto entrañe. Y así podrá constituir una cláusula penal el pacto que las partes no califiquen de tal, y no serlo la cláusula que, a pesar de darle los contratantes tal denominación, no entrañe una función penal." (Énfasis en el original.) J. M. Lobato, *La Cláusula Penal en el Derecho Español*, Pamplona, 1974, pág. 140. Consistente con este criterio de juzgar la cláusula por su finalidad, el Tribunal Supremo de España ha considerado que los intereses enormes e inicuos tienen el fin de conminar y apremiar al deudor para obligarle a cumplir (S. de 9 febrero, 1906); y que es también pena sujeta a moderación la sanción impuesta en contrato por violar la obligación contraída de no aceptar empleo, cooperación directa o indirecta, ni colaboración de ningún género en fábrica o empresa competidora. (S. de 21 marzo, 1950.)[1]

---

[1] Jurisprudencia de España resumida en Lobato, *op. cit.*, págs. 139 y 185. "No es preciso expresar terminantemente que determinada condición se establece con objeto penal, si por sus términos y alcance reviste realmente dicho carácter." (S. de 24 marzo, 1909.)

■ Como remedio en equidad contra el rigor o la excesiva onerosidad de la cláusula penal, el Código Civil provee la modificación de la pena en el siguiente texto de su Art. 1108:

> El tribunal o juez modificará equitativamente la pena cuando la obligación principal hubiera sido en parte o irregularmente cumplida por el deudor. 31 L.P.R.A. sec. 3133.

■ Es éste uno de los raros casos en que el Código incorpora la equidad al derecho positivo y ordena que se pondere en la aplicación de la norma al punto en que la resolución del tribunal pueda descansar de manera exclusiva en ella, principio que ha alcanzado afirmación legislativa en el nuevo Título Preliminar del Código Civil Español. [2] No quiere esto decir que la equidad suplante el Derecho porque aquélla es principio directivo abstracto en busca de justicia para el caso concreto, y se aplica con prudencia, sin violación de la certeza del Derecho y sin que padezca la seguridad jurídica, cuya uniformidad es eje de la ley. La facultad judicial de moderación debe usarse sólo con gran cautela y notoria justificación. (S. de 13 junio, 1944.) Al resultado de frenar el predominio absoluto de la autonomía de la voluntad, bien moderando los efectos de los contratos, ya limitando su obligatoriedad según normas de buena fe, ha de llegarse únicamente en circunstancias extraordinarias, como medio de templar su excesiva onerosidad para el obligado, o la desorbitada desproporción. Bonet Ramón, *Código Civil Comentado*, 2da ed., 1964, pág. 959.

La equidad representa para Pound una infusión de moral en el sistema legal, un recurso de alivio bajo circunstancias de extrema dureza; su concepto está ligado a la materia que la ley no define con precisión y deja a la

---

[2] Pintó Ruiz, *Sentido de la Equidad en el Título Preliminar del Código Civil*, Colegio de Abogados de Barcelona, Ciclo de Conferencias sobre el nuevo Título Preliminar del Código Civil, año 1975, págs. 153–203.

discreción de un hombre bueno; a la corrección de deficiencias inevitables en la Ley por su universalidad, mas recuerda la advertencia de Blackstone de que no debe incurrirse en exceso de la libertad para ponderar todo caso a la luz de la equidad porque se corre el riesgo de abolir la Ley y dejar la decisión de todo asunto al corazón del juzgador. Pound, *Jurisprudence*, T. 2, pág. 361 y ss.

En el caso del Art. 1108, cuando el propio legislador se remite a ella, la equidad tiene función de complementar el derecho positivo y dar flexibilidad a la norma. En tal caso la modificación de la pena es norma de derecho imperativo impuesta a los tribunales por el Art. 1.154 (1108 P.R.); *es deber y no facultad.* (S. 18 enero, 1945); (³) conclusión que llevó en una ocasión al Tribunal Supremo de España a declarar que la moderación cuando proceda, aunque no haya sido pedida por las partes, deberá decretarse *de oficio.* Sin embargo, en su sentencia de 20 noviembre, 1970 desvirtuó dicha jurisprudencia que impone la modificación equitativa de la pena como actuación *ex officio* y retorna al principio de que el remedio en equidad ha de ser rogado. (⁴) Cf. *C. M. & Finance Corp.* v. *Cooley*, 103 D.P.R. 6 (1974). Mas el solo hecho de objetar la ejecución basta para activar la intervención equitativa del tribunal.

Las condiciones de opresión, desproporción en la pena y sus consecuencias injustas en grado extremo

(³) Ss. de 30 enero, 1932, 10 diciembre, 1932, 19 junio, 1941, 21 junio, 1950 y 1 diciembre, 1965; citadas en Lobato, *op. cit.*, págs. 170–171. Llegó a resolverse por el Supremo español (S. 5 nov. 1956) que aun en casos de incumplimiento total, compete moderar la pena cuando resulten *desorbitados* sus efectos en determinados casos, decisión que rebasa el texto del Art. 1108 que exige cumplimiento en parte, o irregular, por el deudor, pero que tiene un posible fundamento en el arbitrio de equidad, aunque no con expresa remisión a la equidad, que permite el elemento de buena fe presente en el Art. 1210 al disponer: "Los contratos se perfeccionan por el mero consentimiento, y desde entonces obligan, no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza, sean conformes a la buena fe, al uso y a la ley." 31 L.P.R.A. sec. 3375.

(⁴) Albaladejo, *Derecho Civil*, 1975, T. 2, V.1, págs. 219–220.

están presentes en la ejecución de esta hipoteca por la acreedora Jack's. Por efecto de la cláusula de aceleración ha logrado resolver en tres años un contrato con veinte años de término, se libra de la restricción impuesta a su capital por un pacto de intereses detrimental al compararlo con el tipo prevaleciente en la actualidad, retiene el importe de 32 plazos pagados por su compradora Turismo y aun los $332,741.68 de intereses indebidamente pagados por error de derecho antes del reconocimiento de exención contributiva por Hacienda y activa la sanción adicional de $320,000 para honorarios de abogado, todo ello como castigo a una demora de nueve días por la deudora hipotecaria en el pago de un plazo. La reducción de la pena por el juez se hace con arreglo a las circunstancias concurrentes en el caso concreto, singularmente el grado de culpa y la intensidad del perjuicio ocasionado. (S. de 8 enero, 1945.) La desproporción entre la infracción del contrato y la pena convencional en el presente caso es evidente. Tratándose de una obligación a plazos, la más adecuada forma de llevar a cabo la moderación de la pena es la concesión de un plazo al deudor para ponerse al corriente de sus obligaciones de pago. [5] A propósito de la relación de la cláusula penal con la facultad resolutiva tácita de las obligaciones recíprocas, señala la sentencia de 26 octubre, 1934 que no puede darse infracción del Art. 1.124 (1077 P.R.) cuando se trata de aplicar el Art. 1.154 (1108 P.R.) basado en la equidad y que constituye un mandato para el juez.

■■■ En lo que respecta a los honorarios pactados en $320,000 que es también por su naturaleza parte del diseño punitivo para apremiar al deudor y conminarlo a cumplir bajo pena de grave perjuicio económico, la moderación de ésta no debe llevarse al punto de la fijación *quantum*

---

[5] Ss. de 19 mayo, 1958, 5 febrero, 1914, 3 julio, 1915. Lobato, *op. cit.*, págs. 187–188.

*meruit* porque ya entonces sería no la modificación, sino la abolición, de lo convenido. Debe dirigirse a una adecuación que sin eliminar el carácter penal de la cláusula, reduzca la pena a una más justa proporción al grado de culpa y la dimensión del perjuicio ocasionado. En las peculiares circunstancias del caso que nos ocupa, la penalidad en su aspecto de honorarios de abogado debe reducirse equitativamente a diez mil dólares ($10,000).

Con estos antecedentes y fundamentos, *se expedirá el auto, y se revocará la sentencia recurrida disponiéndose un plazo de 30 días dentro del cual la demandada Compañía de Turismo deberá ponerse al día en su obligación de pago; y pagar además a su acreedora Jack's Beach Resort, Inc., una penalidad de $10,000 por concepto de costas, gastos y honorarios de abogado.*