# 96 DTA 64

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL DE BAYAMON
## PANEL I

R & G MORTGAGE CORP.
Demandante-Apelada

HIRAM CARLO REYES MATIENZO, TAMBIEN CONOCIDO COMO HIRAM CARLOS REYES MATIENZO, JENNY SANCHEZ ASTACIO, TAMBIEN CONOCIDA COMO JUANA SANCHEZ ASTACIO, Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS
Demandados-Apelantes

Núm. KLAN-96-00247

San Juan, Puerto Rico, a 23 de abril de 1996

Panel integrado por su presidenta, la Jueza Ramos Buonomo
y los Jueces Cordero y Ortiz Carrión

Ramos Buonomo, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Los apelantes señores Hiram Carlo Reyes, su esposa, señora Jenny Sánchez y la Sociedad Legal de Gananciales compuesta por ambos nos solicitan en este recurso de apelación la revocación de la sentencia sumaria dictada el 22 de enero de por el Tribunal de Primera Instancia, Sala Superior de Bayamón, declarando con lugar una demanda de ejecución de hipoteca instada por la apelada R & G Mortgage Corp. (R & G).

### I

En síntesis los hechos de este caso son los siguientes. Los demandados-apelantes constituyeron el 10 de julio de 1992 una hipoteca voluntaria mediante la escritura núm. 491, ante la Notaria Enid S. Rodríguez en garantía de un pagaré suscrito por ellos a favor de R & G Federal Savings Bank, o a su orden, con intereses al 8 5/8% anual, pagaderos principal e intereses en plazos mensuales de $1,750.03, comenzando el día 1 de septiembre de 1992. La referida hipoteca se constituyó sobre una propiedad en el Barrio los Frailes de Guaynabo por la suma de $225,000.00 para garantizar el pago de $225,000.00 de principal; $22,500.00 para intereses además de los establecidos por ley; $22,500.00 para costas, gastos y honorarios de abogado en caso de reclamación judicial o ejecución, y $22,500.00 para otros anticipos que se hicieran a favor de los deudores.

La cláusula número 18 de la escritura es una cláusula de aceleración que faculta al acreedor a dar por vencida la hipoteca y proceder a su ejecución en su totalidad por razón de incumplir el deudor con el pacto de pagar a su vencimiento las sumas garantizadas por la hipoteca.

La parte demandada-apelante estuvo pagando a tiempo los plazos de la obligación hipotecaria asumida con la demandante-apelada por alrededor de un año, hasta el mes de agosto de 1993, cuando incurrió en atrasos.

La acreedora apelada dio por vencida la hipoteca en su totalidad e inició la acción civil para su ejecución, en que reclama un balance impagado de principal de $223,485.05 al 8 5/8% anual desde el 1ro. julio de 1993 hasta su completo pago, más la suma de $22,500.00 para costas, gastos y honorarios de abogado.

Los apelantes, en la contestación enmendada a la demanda, expresaron *"[q]ue la parte demandada entiende que debe una cantidad menor que la reclamada en la demanda."*

Así las cosas, el 7 de febrero de 1995, R & G presentó una moción de sentencia sumaria acompañada de una fotocopia del pagaré, una copia certificada de la constitución de la primera hipoteca con la nota de inscripción, una fotocopia del Estado de Título del Registro de la Propiedad correspondiente y una declaración jurada por Juan J. Díaz, Vice-Presidente Senior de R & G expresando ser los tenedores del pagaré, y las cantidades que, a pesar de los requerimientos de ellos, adeudan los apelantes desde el 1 de agosto de 1993 al presente.

La parte apelante presentó el 11 de abril de 1995 su oposición acompañada de una declaración jurada suscrita por el apelante, señor Hiram Carlo Reyes Matienzo, en la cual acepta nuevamente adeudar dinero a la parte apelada, R & G, pero alegando que la cantidad reclamada no es la correcta y sí una suma menor.█ Posteriormente, el 17 de noviembre de 1995, la parte apelante por voz de una

nueva representación legal presentó un escrito que tituló *"Moción Sometiendo Declaración Jurada"*, cuya declaración jurada forma parte integral de dicha moción. En la declaración jurada levanta por primera vez que la demandante-apelada no había cancelado un préstamo hipotecario por $25,000.00, a pesar de que cobró el dinero, ni le había informado a los apelantes que dicha hipoteca no existe, ni se ha reembolsado o acreditado a la deuda la correspondiente suma de $25,000.00. En dicha declaración, la parte apelante acepta que estuvo haciendo los pagos de la hipoteca hasta enero de 1994, cuando le devolvieron todos sus giros por un total de $7,200.00, y le aceleraron la deuda por falta de pago. Por tanto, de aquí se desprende que no hay controversia en cuanto a que los apelantes no pagaban la hipoteca desde enero de 1994.

En la vista celebrada por el tribunal *a quo* para discutir la moción de sentencia sumaria, la apelada R & G ofreció en evidencia la escritura núm. 412 de cancelación de hipoteca, otorgada el 28 de junio de 1994, ante el notario Luis A. Dávila Alemán, con la cual se le evidenció al Tribunal y a la parte apelante que la hipoteca de $25,000.00 sí fue cancelada. Por tanto, ese hecho no estaba en controversia. Así lo acepta la parte demandada-apelante en el primer párrafo de la página 4 de su escrito de apelación.

A tenor con lo anterior el tribunal *a quo* declaró con lugar la moción de sentencia sumaria presentada por R & G dictando la sentencia apelada.

Denegada por el tribunal una moción de reconsideración presentada en tiempo por los apelantes, éstos apelan la sentencia ante nos alegando que el Tribunal de Primera Instancia cometió los siguientes errores:

*"A. Erró el Honorable Tribunal Superior de Bayamón [sic] cuando, al emitir su **Sentencia Sumaria**, sólo consideró la prueba documental y las alegaciones de la parte demandante, dando por aceptadas todas las alegaciones de la demanda, para [sic] entender que no existía controversia real entre las partes.* (Enfasis en el original.)

*B. Erró el Honorable Tribunal Superior de Bayamón [sic] al aplicar muy restrictivamente el derecho en contra de la parte demandada y liberalmente a favor de la parte demandante.*

*C. Erró el Honorable Tribunal de Bayamón [sic] en la imposición de una suma de $22,500.00 (obedeciendo lo dispuesto en el pagaré hipotecario) por concepto de honorarios de abogado, cantidad que no guarda la más mínima proporción con las horas y el esfuerzo invertido por la representación [sic] de la parte demandante-apelada teniendo la potestad de modificar esta cantidad."*

## II

Expondremos primeramente las normas aplicables a las solicitudes y oposiciones a una sentencia sumaria.

Sabido es que la Regla 36.3 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, autoriza al tribunal a dictar una sentencia sumaria inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, demuestran que no hay controversia real sustancial en cuanto a ningún hecho pertinente y que como cuestión de derecho debe dictarse la misma a favor de la parte promovente.

El propósito de la sentencia sumaria es aligerar la tramitación de un caso, permitiendo que se dicte sentencia sin celebrar una vista en los méritos, cuando de documentos no controvertidos surge que no existen controversias genuinas de hechos materiales, sino que lo que resta es aplicar el derecho. *Hurtado Latre v. Osuna y Fresse,* ___ D.P.R. ___ (1995), **95 J.T.S. 98** a las págs. 1061, 1065; *PFZ Properties, Inc. v. General Accident Insurance Co.,* ___ D.P.R. ___ (1994), **94 J.T.S. 116,** a las págs. 111, 125.

Al hacer una relación de los hechos que no están en controversia, la parte que solicita una sentencia sumaria deberá indicar para cada uno de esos hechos, la fuente admisible en evidencia que pruebe los mismos. Así las declaraciones juradas para sostener u oponerse a la moción se basarán en el

conocimiento personal del declarante. Contendrán los hechos que serían admisibles en evidencia y demostrarán afirmativamente que el declarante está cualificado para testificar en cuanto a su contenido. Podrán incluirse, además, copias juradas o certificadas de todos los documentos que se acompañen con la solicitud de sentencia sumaria. Regla 36.5 de las de Procedimiento Civil, 32 L.P.R.A. Ap.

Además, nos dice esta Regla que:

*"Cuando se presente una moción solicitando que se dicte sentencia sumaria y se sostenga en la forma provista en esta Regla 36, la parte contraria no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que vendrá obligada a contestar en forma tan detallada y específica como lo hubiere hecho la parte promovente exponiendo aquellos hechos pertinentes a la controversia que demuestren que existe una controversia real que debe ser dilucidada en un juicio. De no hacerlo así se dictará en su contra sentencia sumaria si procediere."*
(Enfasis suplido.)
32 L.P.R.A. Ap. III, R.36.5

Declaraciones juradas que sólo contienen conclusiones, sin hechos específicos que las apoyen no tienen valor probatorio, siendo por lo tanto insuficientes para probar lo que allí se concluye. *PFZ Properties Inc., supra.*

## III

A la luz de las normas antes expuestas y examinados los alegatos de ambas partes, procedemos a analizar los errores apuntados por los apelantes.

A pesar de que en su sentencia el Tribunal de Primera Instancia no menciona específicamente la moción de oposición a la sentencia sumaria de los apelantes, resulta obvio que el tribunal consideró la prueba documental y las alegaciones de ambas partes. Entre los documentos considerados por el tribunal, está la contestación enmendada a la demanda, de donde surge que solamente estaban en controversia ante el tribunal las alegaciones quinta y sexta de la demanda referentes al incumplimiento de los apelantes.

Por otro lado, de una lectura de las dos declaraciones juradas que la parte demandada apelante sometió en oposición a la solicitud de sentencia sumaria, surge con meridiana claridad que reconoció adeudar dinero a R & G alegando que la suma adeudada era inferior a la reclamada. Sin embargo, en ninguna de esas declaraciones juradas los apelantes le informaron al tribunal o le hicieron saber la cantidad que según ellos adeudaban. Por lo tanto, el hecho de que los apelantes adeudaban dinero a la parte apelada no estaba en controversia ante el tribunal. Lo que entonces sí quedaba en controversia era la cuantía de lo que los apelantes adeudaban a la parte apelada. En su moción solicitando sentencia sumaria R & G acompañó una declaración jurada detallando el monto de lo adeudado y de las mensualidades atrasadas. Los apelantes en ninguna de sus declaraciones juradas controvirtieron esa prueba. Por tanto, éstos no establecieron controversia alguna en cuanto a la cantidad que la parte apelada reclamaba.

La moción de oposición a la sentencia sumaria de los apelantes descansó únicamente en las aseveraciones y negaciones vertidas en sus alegaciones. No incluyó un sólo documento para evidenciar lo alegado. Por el contrario, la apelada R & G presentó su moción de sentencia sumaria de forma detallada, evidenciando cada hecho alegado mediante la debida prueba documental y la declaración jurada correspondiente.

Para trabar controversia sobre la cantidad adeudada, los apelantes tenían que aseverar en sus declaraciones juradas la cantidad específica adeudada. Optaron por no hacerlo. Los apelantes no podían derrotar la moción cruzándose de brazos descansando únicamente en lo expuesto en sus alegaciones, ni en alegaciones generales en las declaraciones juradas. La parte promovida tenía la obligación de demostrar que tiene prueba para sustanciar sus alegaciones y así controvertir los hechos expuestos por la parte apelada. *PFZ Properties Inc., supra,* a la pág. 125; *Pilot Life Insurance Co. v. Martínez,* \_\_\_ D.P.R. \_\_\_ (1994), **94 J.T.S. 104**, a las págs. 18, 21.

Como hemos visto, la jurisprudencia es clara. La parte apelante tenía la obligación de presentar declaraciones juradas que acreditasen, cuánto era, según ella, el montante de la deuda. No lo hizo. Meramente se limitó a decir que existía deuda, pero que ésta era inferior. Por tanto, no cumplió con su obligación procesal de derrotar la moción de sentencia sumaria, y el tribunal actuó correctamente al declararla con lugar.

El segundo y tercer error los discutiremos en conjunto ya que los apelantes solicitan que apliquemos la equidad.

La defensa levantada tardíamente en la oposición a la moción de sentencia sumaria de que la apelada no había cancelado la hipoteca de $25,000.00, fue claramente derrotada cuando se presentó en evidencia en la vista celebrada la escritura de la cancelación de dicha hipoteca. Esa escritura tiene fecha 28 de junio de 1994. En ningún momento los apelantes levantaron esa *"defensa"* afirmativa en su contestación a la demanda. Por primera vez lo hacen en la segunda declaración jurada que someten al tribunal para la oposición. ■ Véase Recurso de Apelación, Anejo VI. En la realidad esa no era una defensa, ya que nada tenía que ver con el incumplimiento de pago y la controversia en el pleito. Si los apelantes querían levantarla como *"defensa"*, debieron haber depositado en el tribunal las mensualidades reclamadas por la apelada, las cuales motivaron la aceleración y ejecución de la hipoteca. (Véase cláusula núm. 19 de la escritura). No lo hicieron. Es por ello, que el no pago de las mensualidades nada tiene que ver con la no cancelación de la hipoteca de $25,000.00. Las obligaciones recíprocas entre las partes, según surgen de la escritura, son que por razón del préstamo hipotecario otorgado por la apelada, los apelantes tenían la obligación de cumplir con los pagos de las mensualidades según lo acordado. Art. 1053 del Código Civil, 31 L.P.R.A. sec. 3017. Reclamar que el tribunal aplicó restrictivamente el derecho para la parte apelante y liberalmente para la parte apelada, es una imputación al tribunal no fundamentada en los hechos.

El artículo 1208 del Código Civil, 31 L.P.R.A. sec. 3373, hace claro que la validez y el cumplimiento de los contratos no pueden dejarse al arbitrio de uno de los contratantes. El artículo 1044 del Código Civil, 31 L.P.R.A. sec. 2994, añade que las obligaciones que nacen de los contratos tienen fuerza de ley y las partes contratantes deben cumplir al tenor de los mismos. Por otro lado, el artículo 1233 del Código Civil, 31 L.P.R.A. sec. 3471, establece que si los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal sus cláusulas.

Surge de la cuarta cláusula de la escritura de hipoteca otorgada que la parte apelante venía obligada a pagar mensualmente la hipoteca. Sin embargo, no lo hizo. Este hecho no está en controversia. La parte apelante acepta en sus escritos■ que no pagó sus mensualidades como venía obligada a hacerlo y es por ello que la parte apelada tenía perfecto derecho a acelerar la obligación y exigirle el pago total de la deuda. Todo ello es parte de lo acordado en la escritura por las partes. En virtud del contrato de préstamo hipotecario el Tribunal de Primera Instancia reconoció el derecho del apelado de cobrar lo adeudado y acelerar la deuda, concediéndole el remedio solicitado.

Por último, la parte apelante nos solicita que atemperemos la partida de honorarios de abogado porque no guarda la más mínima proporción con las horas y el esfuerzo invertido por el abogado de R & G. La partida de honorarios de abogado según pactada en la escritura de hipoteca, es una cláusula penal de función coercitiva o de garantía adicional del deudor por el incumplimiento de la obligación. *Jack's Beach Resort Inc. v. Cía. Turismo*, 112 D.P.R. 344 (1982). El artículo 1108 del Código Civil, 31 L.P.R.A. sec. 3133, dispone que el tribunal o juez modificará equitativamente la pena cuando la obligación principal hubiese sido en parte o totalmente cumplida por el deudor. En este caso no surge de los autos que esto haya ocurrido. La parte apelante no ha probado que cumplió con el pago, ni que ha depositado dinero alguno en el tribunal, ni para el acreedor, pues hace más oneroso tan siquiera lo que la parte apelante dice o acepta adeudar.

En el caso de *Jack's Beach Resort, Inc.*, el Tribunal Supremo de Puerto Rico sostuvo que la partida de honorarios de abogado pactados en una hipoteca es también una cláusula penal, que puede ser atemperada por los tribunales. Sin embargo, para que eso ocurra el demandado tiene que mostrarle al tribunal haber cumplido parcialmente con la obligación principal. Art. 1108 del Código Civil, *supra*. Nos dice el Tribunal Supremo que la atemperación de las cláusulas penales ocurre por vía de

excepción y no como regla. *Jack's Beach Resort, Inc.,* a la pág. 350. Refiriéndose al artículo 1108 del Código Civil, dispone lo siguiente:

*"Es éste uno de los raros casos en que el Código incorpora la equidad al derecho positivo y ordena que se pondere en la aplicación de la norma al punto en que la resolución del tribunal pueda descansar de manera exclusiva en ella, principio que ha alcanzado afirmación legislativa en el nuevo Título Preliminar del Código Civil Español. No quiere esto decir que la equidad suplante el Derecho porque aquélla es principio directivo abstracto en busca de justicia para el caso concreto, y se aplica con prudencia, sin violación de la certeza del Derecho y sin que padezca la seguridad jurídica cuya uniformidad es eje de la ley. **La facultad judicial de moderación debe usarse sólo con gran cautela y notoria justificación.** (S. de 13 de junio, 1944). Al resultado de frenar el predominio absoluto de la autonomía de la voluntad, bien moderando los efectos de los contratos, ya limitando su obligatoriedad según normas de buena fe, **ha de llegarse únicamente en circunstancias extraordinarias, como medio de templar su excesiva onerosidad para el obligado, o la desorbitada desproporción.**"* (Énfasis suplido y nota al calce omitida.)
*Id.*

Continúa diciendo el Tribunal Supremo a las páginas 350 y 351:

*"La equidad representa para Pound una infusión de moral en el sistema legal, un·recurso de alivio bajo circunstancias de extrema dureza; su concepto está ligado a la materia que la ley no define con precisión y deja a la discreción de un hombre bueno; a la corrección de deficiencias inevitables en la Ley por su universalidad, **más recuerda la advertencia de Blackstone de que no debe incurrirse en exceso de la libertad para ponderar todo caso a la luz de la equidad porque se corre el riesgo de abolir la Ley y dejar la decisión de todo asunto al corazón del juzgador.**"* (Énfasis suplido.)

En el caso que nos ocupa los apelantes no han depositado en el tribunal ninguna de las mensualidades que la apelada reclama le adeuda la parte apelante y que motivaron la aceleración de la hipoteca. Tampoco ha depositado en el tribunal lo que dicha parte apelante acepta adeudar. No consta que haya hecho ofrecimiento de pago, meramente ha alegado que intentó pagar y que el dinero le fue devuelto porque estaba incompleto. No surge que en el tribunal haya depositado dinero para pagar esas·mensualidades.

En el caso que nos ocupa, según consta del pagaré y la escritura, la parte apelante se obligó a pagar la cantidad de $22,500.00 en caso de una ejecución de hipoteca, por concepto de costas, gastos y honorarios de abogado y eso fue condenada a pagar. No vemos situación extraordinaria ni razón alguna para reducir los honorarios pactados. La única alegación al respecto de parte de los apelantes es que los honorarios no reflejan el trabajo hecho en el caso por la apelada. Ello no fue lo pactado.

Por todo lo cual, se confirma la sentencia emitida por el Tribunal de Primera Instancia el día 22 de enero de 1996.

Lo acordó el Tribunal y lo certifica la Secretaria General.

Sonia Pacheco Román
Secretaria General

### ESCOLIOS 96 DTA 64

**1.** La parte apelante acepta en su escrito de apelación a las páginas 3 y 5 que incurrió en atrasos de pago de las mensualidades de la hipoteca.

**2.** En la moción en oposición de 11 de abril de 1995 mencionan los $25.000.00, pero no acompañan prueba documental alguna al respecto, ni hacen alusión a ello en la declaración jurada que acompañaron con la oposición.

**3.** Incluso en su escrito de apelación, a las págs. 3 y 5.