

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Cooperativa de Ahorro y Crédito Sabaneña<br><br>Peticionaria<br><br><br>v.<br><br><br>Jesús Casiano Rivera<br><br>Recurrido | Certiorari<br><br><br>2011 TSPR 207<br><br><br>184 DPR ____ |

Número del Caso:  CC-2011-177


Fecha: 30 de diciembre de 2011


Tribunal de Apelaciones:

Región Judicial de Ponce, Panel VII



Juez Ponente:        Hon. Sixto Hernández Serrano


Abogado de la Parte Peticionaria:

Lcdo. Gilberto Figueroa Merced


Abogado de la Parte Recurrida:

Lcdo. Héctor Vargas Díaz



Materia: Cobro de Dinero




Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Cooperativa de Ahorro y Crédito Sabaneña<br><br>Peticionaria<br><br>v.<br><br>Jesús Casiano Rivera<br><br>Recurrido | CC-2011-0177 |

Opinión del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 30 de diciembre de 2011

Nos corresponde determinar si una cláusula en un contrato de adhesión que impone el pago de gastos y honorarios de abogado en que incurra la parte acreedora en su gestión de cobro de dinero por incumplimiento del pago acordado, constituye una cláusula penal. De contestar en la afirmativa, nos compete discernir si el pago convenido de treinta y tres por ciento (33%) por concepto de dicha cláusula resulta razonable o no. Tras examinar la cláusula y contrato en controversia, la doctrina civilista y la jurisprudencia de este Tribunal sobre los preceptos de la contratación entre personas privadas, concluimos que la mencionada cláusula constituye una cláusula penal válida y que el cargo de 33% convenido resulta razonable.

I.

El 24 de septiembre de 2005 el señor Jesús Casiano Rivera solicitó un préstamo personal de veinticinco mil dólares ($25,000.00) en la Cooperativa de Ahorro y Crédito

Sabaneña (la Cooperativa). El préstamo fue aprobado el 7 de octubre de 2005 y para evidenciar esa deuda el señor Casiano Rivera y la Cooperativa firmaron un pagaré.[1] Dicho pagaré contiene una cláusula que establece una penalidad en ocasión de que el señor Casiano Rivera incumpla su obligación contractual. Establece la cláusula:

> **COSTAS, GASTOS Y HONORARIOS:** Nosotros nos obligamos a pagar a la Cooperativa, o al tenedor por endoso de este pagaré, todos los gastos que se incurran en las gestiones de cobro de este preestamo (sic), más honorarios de abogados en una cantidad igual al 33% de la cantidad del préstamo que se indica al comienzo de este pagaré.[2]

Posteriormente, el recurrido incumplió con su obligación. A tales efectos, la Cooperativa realizó gestión de cobro mediante carta con fecha del 31 de agosto de 2009,[3] pero ante la falta de pago instó demanda en cobro de dinero el 19 de octubre de 2009. En la demanda alegó que la parte demandada le adeudaba la suma de $19,435.84 más "el 33% del principal para costas y honorarios de abogado que ascienden a $8,250.00".[4]

Ante la incomparecencia del recurrido, el Tribunal de Primera Instancia le anotó la rebeldía y subsiguientemente dictó sentencia en rebeldía en la que declaró ha lugar la demanda. Con fecha del 3 de agosto de 2010, notificado el 11 del mismo mes y año, el foro de instancia sentenció al

---

[1] El pagaré, titulado "Pagaré de préstamo a plazos/divulgación de costos", es un modelo preimpreso redactado en su totalidad por la Cooperativa. Apéndice, en la pág. 31.
[2] *Id.*
[3] *Id.* en la pág. 32.
[4] *Id.* en la pág. 34.

señor Casiano Rivera a pagar a la peticionaria "la suma de $19,435.84 y una cantidad adicional de $6,413.55, equivalente al treinta y tres por ciento (33%) de lo adeudado, por concepto de costas, gastos y honorarios de abogado".[5] El 25 de agosto de 2010 el recurrido solicitó la reconsideración del dictamen, pero el 10 de septiembre de 2010 el tribunal de instancia notificó su denegatoria.

Inconforme, el señor Casiano Rivera acudió ante el Tribunal de Apelaciones y alegó que la partida impuesta por concepto de gastos, costas y honorarios de abogado era excesiva, exagerada y abusiva, particularmente cuando se impuso en virtud de un contrato de adhesión donde él no intervino en su redacción. Además, señaló que la partida era excesiva debido a que la Cooperativa no tuvo oposición durante el pleito, puesto que la sentencia se dictó en rebeldía por su incomparecencia. Así las cosas, el 2 de febrero de 2011 el Tribunal de Apelaciones notificó una sentencia en la que dejó sin efecto la parte del dictamen del Tribunal de Primera Instancia que imponía el pago de $6,413.33 en concepto de gastos, costas y honorarios de abogado. El Tribunal de Apelaciones concluyó que la cláusula en controversia era inválida por estimar irrazonable el por ciento contratado, lo que deviene en el quebrantamiento del orden público. En consecuencia, ordenó al foro de instancia establecer una cuantía razonable.

El 4 de marzo de 2011 la Cooperativa presentó el recurso de *Certiorari* ante este Foro y el 14 de junio de

---

[5] *Id.* en la pág. 19.

2011 notificamos al recurrido una Resolución en la que le solicitamos que mostrara causa por la que no debíamos expedir el recurso solicitado. El señor Casiano Rivera presentó oportunamente ante esta Curia un escrito en oposición al recurso presentado, en donde alegó la irrazonabilidad de la cláusula pactada y adujo que por ser un contrato de adhesión con un por ciento excesivo para honorarios de abogado, se debía declarar nula dicha cláusula por violar el orden público. Contando con la comparecencia de ambas partes procedemos a resolver.

## II.

La controversia de autos nos invita a examinar el concepto de razonabilidad de las cláusulas penales en los contratos de adhesión y la función moderadora de los tribunales ante estas cláusulas.

## A.

La teoría contractual que rige en nuestra jurisdicción dispone el principio de libertad de contratación o autonomía de la voluntad. El principio de *pacta sunt servanda* lo recoge expresamente el Código Civil de Puerto Rico: "Los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público", Cód. Civ. PR art. 1207, 31 L.P.R.A. Sec. 3372; "Las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes, y deben cumplirse al tenor de los mismos", Cód. Civ. PR art. 1044, 31 L.P.R.A. Sec. 2994. Este principio, considerado como axioma del

liberalismo económico, permite expandir el campo previsible de los legisladores al permitir introducir en las relaciones contractuales variedades noveles y atípicas producto del imaginario humano. José Luis Concepción Rodríguez, *Derecho de contratos* 35 (2003). A pesar de ello, el principio de libertad contractual no es irrestricto y está sujeto a intervención de los tribunales, según dimana del propio Código Civil. Cód. Civ. PR art. 1207, 31 L.P.R.A. Sec. 3372. *Véase también* Puig Peña, *Compendio de derecho civil español*, Vol. III, págs. 338-42 (3ra ed. 1976).[6]

**B.**

El derecho de crédito faculta al acreedor para exigir del deudor una obligación de dar, hacer o no hacer, Cód. Civ. PR art. 1041, 31 L.P.R.A. Sec. 2991, y nuestro Código Civil le provee al acreedor ciertos mecanismos para proteger y garantizar ese derecho de crédito. Estas garantías, en parte, tienen la encomienda de "estimular la voluntad del obligado para que realice la prestación debida". 2-I José Puig Brutau, Fundamentos de derecho civil 449 (1985).

Así, como una garantía del derecho de crédito, encontramos en el Código Civil la llamada cláusula penal. Cód. Civ. PR arts. 1106-1109, 31 L.P.R.A. Secs. 3131-3134. A diferencia de otros códigos civiles, como el francés y el

---

[6] Otras limitaciones al principio de libertad contractual son la buena fe contractual, la equidad y la doctrina de *rebus sic stantibus*. *Véase Banco Popular de Puerto Rico v. Sucesión Talavera*, 174 D.P.R. 686 (2008).

quebequés, nuestro Código Civil no define específicamente lo que constituye una cláusula penal.[7]  Empero, según la jurisprudencia y la doctrina se ha definido dicha cláusula como "una convención accesoria a una obligación principal mediante la cual se promete realizar una prestación, generalmente pecuniaria, para el caso en que una de las partes no cumpla o cumpla mal o irregularmente lo prometido".  José R. Vélez Torres, *Derecho de obligaciones* 297-98 (Migdalia Fraticelli Torres ed., 2da ed. 1997)(citas omitidas).[8]

Se han destacado dos funciones de la cláusula penal: (1) asegurar el cumplimiento de una obligación y (2) evaluar por anticipado los perjuicios que habría de ocasionar al acreedor el incumplimiento de la obligación. *R.C. Leasing Corp. v. Williams Int. Ltd.*, 103 D.P.R. 163 (1974).  La capacidad de preestimar los daños en sustitución del método convencional y supletorio que fija la acción resolutoria del artículo 1077 del Código Civil, 31 L.P.R.A. Sec. 3052, en donde se exige probar los daños, la provee el propio artículo 1106 del Código, 31 L.P.R.A.

---

[7] Véase el artículo 1623 del Código Civil de Quebec, que dispone:  "A penal clause is one by which the parties assess the anticipated damages by stipulating that the debtor will suffer a penalty if he fails to perform his obligation".  Por su parte, en el código francés se define como:  "La clause pénale est celle par laquelle une personne, pour assurer l'exécution d'une convention, s'engage à quelque chose en cas d'inexécution".  Cód. Civ. Fran. art. 1226.

[8] Cabe señalar que a pesar de su parecido, no debe confundirse la figura de la cláusula penal con la figura de daños líquidos del *common law* anglosajón.  Pedro Silva Ruiz, *La cláusula penal*, 54 Rev. Jur. U.P.R. 89, 105-08 (1985); *véase también R.C. Leasing Corp.*, 103 D.P.R. en la pág. 168.

Sec. 3131, al prescribir que la pena sustituirá la indemnización de daños. *Levitt and Sons of Puerto Rico v. Hernández Denton*, 105 D.P.R. 184, 192 (1976). En otras palabras, el convenio de una cláusula penal redunda en la ausencia de tener que probar los daños que sufrió el acreedor por el incumplimiento de la obligación. *C.M. Finance Corp. v. Cooley*, 103 D.P.R. 6, 9-10 (1974).

Esta cualidad anticipatoria de la cláusula penal y su naturaleza *in terorrem* tiene, no obstante, un límite impuesto por el artículo 1108 del Código Civil, 31 L.P.R.A. Sec. 3133, que faculta al tribunal a modificar equitativamente la pena cuando la obligación haya sido satisfecha en parte o irregularmente. *Levitt and Sons of Puerto Rico*, 105 D.P.R. en la pág. 193. Sin embargo, la facultad moderadora de los tribunales debe usarse sólo con gran cautela y justificación, pues la acción de limitar la autonomía de la voluntad de los contratantes debe ejercerse únicamente en circunstancias extraordinarias. *Jack's Beach Resort v. Compañía de Turismo de Puerto Rico*, 112 D.P.R. 344, 350 (1982).

Por último, nos hacemos eco de lo expresado anteriormente por este Tribunal al respecto de que "la fórmula verbal que se emplee en el contrato no es lo que provee normalmente la clave. Hay que precisar primero las funciones que generalmente cumple la cláusula penal y escudriñar su impacto en cada caso específico". *Levitt and Sons of Puerto Rico*, 105 D.P.R. en la pág. 193.

**C.**

El presente caso requiere que comentemos sobre la validez de un contrato de adhesión con cláusula penal. Al hablar sobre los contratos de adhesión resulta imperativo que comentemos sobre otro aspecto paralelo:  la interpretación de los contratos.

Los contratos de adhesión son:

> [A]quellos en que el contenido, esto es, las condiciones de la reglamentación son obra de una sola de las partes, de tal modo que el otro contrayente no presta colaboración alguna a la formación del contenido contractual, quedando así sustituida la ordinaria determinación bilateral del contenido del vínculo por un simple acto de aceptación o adhesión al esquema predeterminado unilateralmente".

*Maryland Casualty Co. v. San Juan Racing Association*, 83 D.P.R. 559, 566 (1961) (citando a 3 Castán, *Derecho civil español* 332 (1954)).

La norma de este Tribunal ha sido consistentemente que si bien los contratos de adhesión son válidos en nuestra jurisdicción, la interpretación de sus disposiciones se hará favorablemente hacia la parte que nada tuvo que ver con su redacción. *Nivia Herrera v. First National City Bank*, 103 D.P.R. 724, 727 (1975); *Ulpiano Casal v. Totty Manufacturing*, 90 D.P.R. 739, 744 (1964); *Maryland Casualty*, 83 D.P.R. 559.

Sin embargo, el hecho de que un contrato sea de adhesión significa tan sólo que se analizará del modo más favorable a la parte más débil, pero **no que se interpretará de modo irrazonable**. *R.C. Leasing Corp.*, 103 D.P.R. en la pág. 167 (énfasis suplido). Por tal motivo, constituye un

error conceptual que los contratos de adhesión se consideren nulos meramente por ser redactados por una sola de las partes. *Véase C.R.U.V. v. Peña Ubiles*, 95 D.P.R. 311, 314 (1967). Ante tales contratos, la función principal de un tribunal debe dirigirse a evaluar la presencia de cláusulas ambiguas. En ausencia de ambigüedad el contrato se interpretará según sus términos. *Ortiz Alvarado v. Great American Life Assurance*, 2011 T.S.P.R. 79; *Martín Pérez v. Universidad Central de Bayamón*, 143 D.P.R. 554 (1997). Independientemente del tipo de cláusula en cuestión, bien sea una cláusula penal u otra dispositiva, el método de interpretación antes descrito se aplicará por igual. Despejada la apariencia de ambigüedad, el tribunal entonces procederá a evaluar la razonabilidad de lo allí convenido.

Examinada la doctrina contractual antes esbozada, pasemos a ver su aplicación a los hechos de la controversia de autos.

### III.

El asunto principal en esta controversia es evaluar la razonabilidad de lo convenido, por lo que dista de realizar una función interpretativa de las cláusulas contractuales. Veamos.

### A.

En las comparecencias del señor Casiano Rivera ante los tribunales inferiores y este Tribunal su argumentación se ha reducido tautológicamente a decir que el contrato convenido es de adhesión y que él no tuvo oportunidad de

intervenir para fijar los honorarios. Como indicamos anteriormente, los contratos de adhesión tienen validez en nuestra jurisdicción. Su naturaleza adhesiva no es inherentemente nula. *R.C. Leasing Corp.*, 103 D.P.R. en la pág. 176. Sin dudas, el pagaré firmado entre el recurrido y la Cooperativa es un contrato de adhesión porque surge del expediente la falta de participación del recurrido en su redacción.

Nos corresponde, pues, evaluar si resulta ambigua la cláusula de costas, gastos y honorarios, que dispone que en caso de incumplimiento el deudor asumirá "todos los gastos que se incurran en las gestiones de cobro de este preestamo (sic), más honorarios de abogados en una cantidad igual al 33% de la cantidad del préstamo".[9] Coincidimos con la apreciación del Tribunal de Apelaciones con relación a dicha cláusula:

> Observada la cláusula antes transcrita, no encontramos en ella características que nos hagan concluir que sea una (sic) obscura o ambigua. Ante esa realidad, a pesar de ser una (sic) claramente adhesiva no es posible determinar que *por esta razón* sea nula; la cláusula está redactada de manera clara y su lenguaje es uno (sic) de fácil entendimiento.[10]

De una lectura concienzuda resulta evidente la ausencia de ambigüedad. Se estipula que en caso de incumplimiento el señor Casiano Rivera pagará por los gastos y honorarios de abogado en que incurra la Cooperativa en su gestión de cobro del préstamo. Llegada a

---

[9] Apéndice, en la pág. 31.
[10] Sentencia del Tribunal de Apelaciones, KLAN-2010-1487, 31 de enero de 2011. Apéndice, en la pág. 14.

esa conclusión de que la cláusula no es ambigua, resulta improcedente aplicar los métodos de interpretación en contratos de adhesión, donde los tribunales habrán de favorecer a la parte que no intervino en su redacción.

**B.**

Cabe preguntarnos en esta ocasión si la cláusula de costas, gastos y honorarios de abogado del pagaré constituye o no una cláusula penal. La importancia de responder primero a esa pregunta ilustrará a un tribunal sobre las normas a utilizar al enfrentarse a una cláusula contractual. Por ejemplo, de contestar en la afirmativa a la pregunta, se utilizará la normativa provista por el Código Civil en cuanto a las cláusulas penales. Cód. Civ. PR arts. 1106-1109. Para determinar si una cláusula es penal hay que ver su funcionalidad, mas no la nomenclatura empleada. *Jack's Beach Resort*, 112 D.P.R. 344, 349. La funcionalidad de la cláusula debe medirse en virtud de (1) su capacidad para anticipar daños sin tener que probarlos posteriormente en caso de incumplimiento y (2) sus propósitos coercitivos y punitivos para evitar el incumplimiento (su naturaleza *in terrorem*).

Al examinar la cláusula en cuestión observamos que su función principal es la preestimación de los daños y gastos en que la Cooperativa incurriría en su gestión de cobrar la obligación incumplida. Esos gastos, claro está, incluyen los honorarios de abogado. En cuanto a la segunda función descrita, cobrar la cantidad del 33% de la deuda cumple con sus propósitos de disuadir el incumplimiento. En

consecuencia, no dudamos que estemos frente a una cláusula penal.

A pesar de que la cláusula incluye una partida para honorarios de abogado, no la exime de su cualidad de cláusula penal ni estimamos que sea contraria a Derecho por esa disposición. Como sabemos, este pacto fue entre la Cooperativa y el recurrido, por lo que los honorarios que se cobren producto de este convenio constituyen una indemnización para la Cooperativa, independientemente los honorarios que ésta haya pactado con sus abogados. Con relación a las cláusulas entre partes privadas que pactan honorarios de abogado, coincidimos con el Juez Hon. Sigfrido Steidel Figueroa al exponer:

> [E]n algunos tipos de relaciones contractuales se establece un porcentaje específico para honorarios de abogado en caso de incumplimiento por parte del deudor. Frecuentemente esos porcentajes fluctúan entre un 5% del monto total del principal adeudado hasta un 30%. Se podría argumentar que esta última cifra es, por lo general, irrazonable, ya que la gestión de cobro de dinero es esencialmente sencilla . . . . Sin embargo, este tipo de pacto reviste caracteres de una cláusula penal cuya finalidad no es exclusivamente establecer el monto de unos honorarios de abogado, sino también proteger al acreedor de ciertos riesgos que la obligación pactada genera, a la vez que representa un disuasivo para el incumplimiento del deudor. Además, se trata de una disposición incluida como parte de la contratación original sin que necesariamente el abogado que inicia las gestiones judiciales de cobro haya tenido participación. . . . El abogado más bien actúa incidentalmente en las gestiones de cobro.

Sigfrido Steidel Figueroa, *Ética y responsabilidad disciplinaria del abogado*, 164-65 (2010).

Determinado que se trata de una cláusula penal, debemos entonces examinarla bajo el palio del artículo 1108 del Código Civil. A saber, debemos razonar si se justifica la modificación de la pena por haberse pagado parte de la deuda. En la demanda original presentada por la Cooperativa, ésta solicitó en remedio que se aplicara *ad verbatim* la cláusula en controversia en cuanto a que el 33% debe aplicarse al monto del préstamo original. En otras palabras, la peticionaria solicitaba aplicar el 33% a $25,000, para un total de $8,250 en gastos y honorarios. Acertadamente el Tribunal de Primera Instancia modificó la pena para aplicar el 33% al monto adeudado al momento de presentar la demanda, para un total de $6,413.55.

No obstante, el recurrido solicita que nuestra función modificadora se extienda no a la aplicación de la pena, sino a la pena en sí misma. Para ello nos corresponde ponderar la razonabilidad de la pena.

### c.

Aquí llegamos al planteamiento central del caso. ¿Acaso pactar el pago de 33% del monto para gastos, costas y honorarios de abogado es excesivo, abusivo y ofende el orden público contractual? ¿O, por el contrario, es una cuantía razonable?

El Tribunal de Apelaciones concluyó que ese por ciento es irrazonable y contraviene el orden público. Erró dicho Tribunal, máxime cuando omitió toda la doctrinal contractual sobre las cláusulas penales, aplicable a la controversia de autos. Según hemos venido esbozando a lo

largo de esta Opinión, al enfrentarnos a una cláusula que levanta sospecha de ser penal, debemos realizar un examen de su funcionalidad. De ser una cláusula penal, no podemos soslayar el carácter punitivo de esas cláusulas. Hacer lo contrario sería restarle eficacia a un mecanismo creado legislativamente para darle garantía y fortalecimiento a los negocios jurídicos.

No ignoramos la capacidad de los tribunales de intervenir en las relaciones contractuales y dar remedios en equidad. *Véase Banco Popular de Puerto Rico v. Sucesión Talavera*, 174 D.P.R. 686 (2008); *Jack's Beach Resort*, 112 D.P.R. 344 (1982). Empero, esas intervenciones deben proceder con sensatez y cautela, *id.*, y solamente cuando una de las prestaciones resulte excesiva, abusiva y una desproporción intolerable en las prestaciones. *Banco Popular de Puerto Rico*, 174 D.P.R. en las págs. 710-11.[11]

Cuando un tribunal interviene con las relaciones contractuales debe sopesar los valores jurídicos afectados con su intervención. En una controversia como la de autos, por ejemplo, se deben ponderar valores como la autonomía de la voluntad y la certeza de los negocios jurídicos. La autonomía de la voluntad gobierna todo el desarrollo de la vida contractual. Federico Puig Peña, *Compendio de derecho civil español* 338 (3ra ed. 1976). Interferir con ella sin

---

[11] Deseamos hacer hincapié en que el reconocimiento que anteriormente hemos hecho a la capacidad interventora de los tribunales en las relaciones contractuales es reflejo de que **no estamos dispuestos a aplicar automáticamente una cláusula penal, sino que ésta deberá ponderarse a la luz de los hechos de cada caso.**

justificación es un acto de trastocar una de las bases de nuestro ordenamiento jurídico que sostiene gran parte de las relaciones sociales y comerciales. "[L]a intervención moderadora del tribunal con la autonomía contractual de las partes se da únicamente en circunstancias extraordinarias . . . [y] ha de ejercerse con extrema cautela y patente justificación por su efecto lesivo a la estabilidad de los contratos y a la seguridad jurídica". *López de Victoria v. Rodríguez*, 113 D.P.R. 265, 271 (1982). Asimismo, interferir con la doctrina de *pacta sunt servanda* es el equivalente de modificar o hasta anular una ley; no olvidemos que los contratos son ley entre las partes. Cód. Civ. PR art. 1044.

Una cláusula que impone una pena de 33% para gastos y honorarios de abogado en caso de incumplimiento contractual no justifica nuestra intervención con la estabilidad de los negocios jurídicos. El recurrido sostiene que es excesivo y abusivo. Sin embargo, y a modo de ejemplo, al examinar varias leyes que fijan los costos de honorarios de abogado en distintas causas de acción, vemos que los por cientos fluctúan entre 20% y 33%.[12]

---

[12] *Véase, e.g.*, Ley Núm. 9 de 8 de agosto de 1974, 4 L.P.R.A. Sec. 742 (establece que el máximo de honorarios de abogado permitido en casos de daños y perjuicios es 33% del producto final o 25% si el cliente es menor de edad o incapacitado mental); Ley Núm. 118 de 25 de junio de 1971, 32 L.P.R.A. Sec. 3343 (en los pleitos de clase por consumidores, los tribunales impondrán "una cantidad razonable que no bajará de un 25% en concepto de honorarios de abogado"); Código de Seguros, 26 L.P.R.A. Sec. 4111 (en acciones de daños y perjuicios por impericia médico-hospitalaria se establecen honorarios escalonados entre un 33% y 20%, según aumenta la cuantía de la indemnización).

Por consiguiente, el 33% pactado entre la Cooperativa y el señor Casiano Rivera no nos parece que ofende la razonabilidad ni el orden público contractual. Asumir la postura del recurrido y validar la decisión del Tribunal de Apelaciones convierte injustificadamente a la cláusula penal en inoperante. La pretensión del recurrido es llevar la fijación de los honorarios a base de *quantum meruit* (tanto como se merece) al alegar que debido a su incomparecencia y, por consiguiente, el dictado de una sentencia en rebeldía, se deben reducir los honorarios de abogado en virtud de que la Cooperativa obtuvo una sentencia sin oposición alguna. Esta pretensión, más que una moderación, como sostiene el Tribunal de Apelaciones, resulta una anulación de una cláusula válidamente convenida. *Jack's Beach Resort*, 112 D.P.R. en las págs. 352-53.

**D.**

En cuanto a la aplicación de la Regla 44.1 de Procedimiento Civil de 2009, 32 L.P.R.A. Ap. V R. 44.1, por el Tribunal de Apelaciones, nos limitaremos a decir que erró dicho foro al aplicar la Regla y soslayar el convenio habido entre las partes. Ese convenio era el sustituto de la preestimación de los honorarios de abogado y la posible temeridad en que pudiera ocurrir el demandado. Ergo, la controversia había que examinarla bajo la teoría contractual y no bajo las reglas procesales.

**IV.**

En la controversia de autos, el 33% pactado entre la Cooperativa y el señor Casiano Rivera fue el producto de la autonomía de sus voluntades. Intervenir con ella sin justificación suficiente sería una intromisión indebida que atenta contra el principio de *pacta sunt servanda*. Más aún, tal proceder equivale a eludir el propósito *in terrorem* y de preestimación de daños de una cláusula penal. Por estimar que fue razonable el porcentaje convenido, que no atenta contra el orden público contractual y que no se justifica la intervención moderadora de los tribunales, dejamos sin efecto la sentencia emitida por el Tribunal de Apelaciones que ordenó al Tribunal de Primera Instancia a modificar la cuantía por concepto de gastos y honorarios de abogado. Restablecemos así la sentencia emitida por el foro de instancia.

Se dictará sentencia de conformidad.


Anabelle Rodríguez Rodríguez
Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Cooperativa de Ahorro y Crédito Sabaneña<br><br>Peticionaria<br><br>v.<br><br>Jesús Casiano Rivera<br><br>Recurrido | CC-2011-0177 |

SENTENCIA

San Juan, Puerto Rico, a 30 de diciembre de 2011

Por los fundamentos expuestos en la Opinión que antecede, los cuales se incorporan íntegramente a la presente, se dicta sentencia revocando el dictamen del Tribunal de Apelaciones y se restablece la sentencia emitida por el foro de instancia.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo interina. La Jueza Asociada señora Pabón Charneco concurre y hace constar la siguiente expresión: "La Jueza Asociada señora Pabón Charneco concurre con el resultado. No obstante, no concuerda con que este tipo de cláusula penal se aplique automáticamente en casos en que se alegue incumplimiento de la obligación por razones económicas imprevistas". Los Jueces Asociados señor Rivera García y señor Feliberti Cintrón concurren con el resultado sin opinión escrita. La Jueza Asociada señora Fiol Matta no intervino.

Larissa Ortiz Modestti
Secretaria del Tribuna Supremo Interina