ROCHESTER CAPITAL LEASING CORPORATION, demandante y recurrida, v. WILLIAMS INTERNATIONAL LIMITED, demandada y recurrente.

*Número:* R-69-188 *Resuelto:* 23 de diciembre de 1974

*Robert E. Schneider, Jr.* y *Antonio Monroig Malatrasi,* abogados de la recurrente; *Joseph W. Kiefer,* abogado de la recurrida.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

La recurrente ("Williams International Limited") tomó en arrendamiento una máquina compaginadora a la recurrida ("Rochester Capital Leasing Corporation") por el término de cinco años, renovables por igual plazo a opción de la arrendataria. Los cánones convenidos fueron de $104.63 mensuales —de prorrogarse el contrato esta suma se reducía—pagaderos a partir del 15 de noviembre de 1962 hasta el 15 de julio de 1967. Al otorgarse el contrato en octubre de 1962, Williams International Limited le pagó a Rochester Capital la suma de $313.89, equivalente a tres de los referidos plazos.

El convenio disponía que en caso de no satisfacerse cualquier canon dentro de los diez días siguientes a su vencimiento, Rochester Capital podría recurrir a cualquiera de estos remedios o a varios de ellos: declarar vencidos la totalidad de los cánones acordados, sin notificación o requerimiento a Williams International; demandar a Williams International por el balance de los cánones vencidos y por vencer; y tomar posesión de la máquina arrendada sin que tuviese que mediar orden judicial o notificación o requerimiento a Williams International. Se pactó además que Williams International le satisfaría a Rochester Capital por concepto de honorarios, de tener que acudir ésta a los tribunales, el 15% de la cantidad reclamada.

El 2 de diciembre de 1964 Rochester Capital demandó a Williams International en cobro de dinero. Embargó, en adición, la máquina compaginadora y una cuenta bancaria de la arrendataria. Según estipulación de las partes, habían vencido veinticinco mensualidades a la fecha de la radicación de la demanda, montantes a $2,615.75, de las cuales Williams International había pagado veintidós, más el pago inicial de

$313.89. Luego la arrendataria pagó dos mensualidades, más, lo que provocó que se enmendase la demanda para reclamar $3,452.79, en vez de $3,766.68, o sea, la diferencia entre el montante de los sesenta cánones ($6,277.80) y la totalidad de lo pagado por Williams International ($2,825.01).

Se declaró con lugar la demanda, ordenándosele a la arrendataria a satisfacerle a Rochester Capital la cantidad de $3,452.79, más el 15% de esta suma para honorarios de abogados y las costas. Williams International solicitó la revisión de la sentencia, alegando fundamentalmente la comisión de los siguientes errores: concluir que el depósito original representaba una garantía y que por tanto podía utilizarse únicamente para el pago de las últimas tres mensualidades; resolver que, al aceptar el pago de dos mensualidades después de la radicación de la demanda, Rochester Capital no renunció a sus derechos por el alegado incumplimiento del contrato; y abstenerse de fallar que la arrendadora no podía declarar vencida la totalidad de la deuda y a la vez apoderarse del bien arrendado.

I

*La naturaleza del primer pago.*

■ El contrato otorgado, interpretado en su conjunto, revela que el pago inicial de $313.89 constituyó una garantía, no solo para el pago de los últimos cánones sino para el debido cumplimiento de otras obligaciones de la arrendataria bajo el convenio. Adviértase que la arrendataria se obligó a pagar cánones mensuales hasta exactamente tres meses antes de la fecha del vencimiento del contrato. De tener la arrendadora que utilizar dicha suma para excusar el incumplimiento por la arrendataria del pago de cualquier canon, la garantía podía desaparecer. De haber sido tal la intención de las partes el contrato no hubiese dispuesto ciertamente que en caso de falta de pago de cualquier canon dentro de los primeros diez días se podía acudir por la arrendadora a los reme-

dios acordados; se hubiese estipulado en vez que podrían invocarse dichos remedios después de vencidos cánones equivalentes al depósito original.

■ El hecho de que un contrato sea de adhesión, aun si tal fuese el caso aquí, significa tan solo que se analizará del modo más favorable a la parte más débil, *Barreras* v. *Santana*, 87 D.P.R. 227 (1963), pero no que se interpretará de modo irrazonable.

## II

*La aceptación de pagos después de la radicación de la demanda.*

■ La aceptación por la arrendadora, después de radicada la demanda, de un cheque por el importe de dos de las tres mensualidades vencidas no constituyó una renuncia por ella de los remedios a que tenía derecho en caso de incumplimiento. Quedaba y quedó siempre un plazo por pagar, según la propia estipulación de las partes durante el juicio. (T.E. pág. 17.) Podía, por tanto, la arrendadora ejercer el derecho pactado de declarar vencida la totalidad de la deuda. Véase: *F.S.E.* v. *Peña Plaza*, 100 D.P.R. 637 (1972). Los casos de *Morales* v. *Martínez*, 40 D.P.R. 724 (1930), *Campos* v. *Tribunal Superior*, 75 D.P.R. 370 (1953) e *Igartúa* v. *Ruiz*, 73 D.P.R. 354 (1952), son inaplicables al presente. Fuera de que envolvían todos el arrendamiento de bienes inmuebles, en estos litigios se aceptaron pagos después de la demanda equivalentes a lo adeudado.

## III

*La multiplicidad de remedios. Su conexión, si alguna, con el problema de las cláusulas penales.*

Llegamos aquí al planteamiento central del caso. ¿Qué principios rigen el reconocimiento al acreedor de diversos remedios y la oportunidad de su ejercicio conjunto en arrendamientos de bienes muebles como el presente?

■ En el derecho norteamericano existe una decidida tendencia, con excepciones bajo circunstancias determinadas, a invalidar las cláusulas penales. 11 Williston *On Contracts*, secs. 781 *et seq.* y sec. 1340; 5 Corbin *On Contracts*, 376-377; *Uniform Commercial Code*, West ed., sec. 1-106. La inclusión en un contrato de una opción al acreedor de cobrar lo adeudado y reposeer el bien vendido o arrendado se ha catalogado como la inserción de una cláusula penal. *Ricker* v. *Rombough*, 261 P.2d 328 (Cal. 1953). La inclinación de los tribunales en estos casos es a permitir básicamente que el acreedor recobre tan solo los daños de todo género realmente sufridos y nada más.

Tal ha sido igualmente la regla usual del derecho inglés. 1 Chitty *On Contracts*, Londres, 1968, págs. 1488 *et seq.*; Treitel, *Contracts*, Londres, 1962, pág. 612.

La cuestión, sin embargo, es tan solo resolvible bajo nuestro propio Código Civil, aunque en algunas de nuestras decisiones se han utilizado indebidamente conceptos derivados de la jurisprudencia norteamericana. Los principios vigentes en otras comunidades son tan solo de interés, por supuesto, para explorar el modo en que otros sistemas jurídicos se enfrentan al problema y ayudar, mediante las técnicas del derecho comparado, a la natural evolución de los conceptos jurídicos.

■ Nuestro derecho civil sobre el particular, amparado detalle a detalle en el español, fija normas distintas para el análisis de las obligaciones con cláusula penal. Véanse los Arts. 1106 al 1109 de nuestro Código, 31 L.P.R.A. secs. 3131 a 3134, equivalentes a los Arts. 1152 al 1155 del Código Civil Español. En nuestro derecho es posible pactar obligaciones con cláusula penal. 31 L.P.R.A. sec. 3131; *Caballero* v. *Kogan*, 73 D.P.R. 666 (1952).

■ Se le imponen limitaciones y salvaguardas, no obstante, a la facultad de incluir en los contratos este género de

cláusulas. El Art. 1108 de nuestro Código Civil, 31 L.P.R.A. sec. 3133, dispone, por ejemplo:

"El tribunal o juez modificará equitativamente la pena cuando la obligación principal hubiera sido en parte o irregularmente cumplida por el deudor."

También debe recordarse la disposición del Código que le impide al acreedor exigir conjuntamente el cumplimiento de la obligación y la satisfacción de la pena excepto cuando se le haya otorgado, como en la presente situación de hechos, dicho poder. 31 L.P.R.A. sec. 3132. La validez de la cláusula penal depende igualmente de que no sea nula la obligación principal, 31 L.P.R.A. sec. 3134, y de que sus disposiciones no violen precepto legal alguno de orden público. Espín, *La Cláusula Penal en las Obligaciones Contractuales*, 30 Rev. de Derecho Privado 145, 158–159 (1946).

¿Qué constituye una cláusula penal? A distinción del Código Civil francés, Dalloz, *Codes d'Audience*, 29a. ed., Art. 1226, ni el código español ni el puertorriqueño provee una definición específica. Es evidente, no obstante, que la fórmula verbal que se emplee en el contrato no es lo que provee normalmente la clave. Hay que precisar primero las funciones que generalmente cumple la cláusula penal y escudriñar su impacto en cada caso específico. S. de 6 de febrero de 1906 (Esp.) ; Espín, *supra*, 150.

■ Respecto a las funciones de la cláusula penal nos hemos expresado antes, habiendo señalado que "las dos funciones más importantes atribuidas a la cláusula penal es [*sic*] la de asegurar el cumplimiento de una obligación . . . y la de . . . evaluar por anticipado los perjuicios que habría de ocasionar al acreedor el incumplimiento inadecuado de la obligación . . . ." *Simonet* v. *Igaravídez*, 90 D.P.R. 1, 9 (1964). Véanse: Puig Brutau, *Fundamentos de Derecho Civil*, to. 1. vol. 2, págs. 472–474 ; 3 Castán, *Derecho Civil Español, Común y Foral*, 8a. ed., 120–121.

 Debido precisamente a que la cláusula penal no se encamina a reparar los daños sufridos por el acreedor sino que en adición cumple un fin coercitivo y punitivo, la referida cláusula permite, sujeto al principio de moderación de la pena, que las partes convengan que la evaluación de los daños "sobrepase la medida real del daño, de forma que este exceso actúe de modo eficaz como presión sobre el deudor para impulsarle al cumplimiento específico de la obligación ante la amenaza de tener que pagar un resarcimiento que exceda del equivalente pecuniario de la prestación a que se obliga." Espín, *op. cit.*, 153. Esta naturaleza *in terrorem* de la cláusula penal, en su función de fianza o garantía, tiene otro importante límite, sin embargo, que urge señalar. La prestación garantizadora puede ser tan desorbitada y excesiva que se convierta en una fianza impropia o caparra. 2 Santamaría, *Comentarios al Código Civil*, 90.

El Código Civil de España, como se habrá observado, crea una estructura muy flexible para el tratamiento de las cláusulas penales, al estilo del código alemán y del suizo y distinto al código francés y a los sistemas de Gran Bretaña y Estados Unidos. Marsh, *Penal Clauses in Contracts: a Comparative Study*, 32 J. Comp. Leg. & Int'l L. (3a Ser.) 66 (1950); Schlesinger, *Comparative Law*, 2a. ed. 1959, págs. 329 *et seq.* Esto dificulta el proceso de interpretación, pero facilita la evolución natural del derecho hacia el establecimiento de normas que respondan a las realidades sociales cambiantes, a la par que permite la adecuación de las pautas generales a casos concretos que se funden en hechos diversos.

 A la luz de lo anterior, veamos el caso presente. La familiar cláusula relativa al vencimiento total de la deuda en caso de incumplimiento de la deuda es, a lo sumo, una cláusula penal lícita, si es que en verdad se trata de tal tipo de cláusula. El elemento coercitivo se reduce a concederle al acreedor el uso antes de tiempo de los cánones por pagar, lo que significa básicamente que puede usufructuar su interés por

el balance del tiempo convenido. La cantidad que se cobra, no obstante, es exactamente la convenida. La cláusula, igualmente conocida, referente a la reposesión del bien arrendado es también lícita. Tampoco se le debe clasificar a solas, *in abstracto*, como una cláusula estrictamente de orden penal.

La dificultad aquí estriba en la conjunción y ejercicio de los dos remedios. Inicialmente el arrendador optó por intentar cobrar lo adeudado, embargando, además de la cuenta bancaria de la arrendataria hasta cierta cantidad específica, su propia máquina compaginadora. Más tarde, sin embargo, se traslada el equipo a Nueva York donde se trata de vender por la arrendadora, como antes intentó hacerlo en Puerto Rico (T. E. pág. 28), lo que equivale al ejercicio de su opción de reposesión.

El Tribunal Supremo de España, S. de 3 de julio de 1915, 133 *Jurisprudencia Civil*, 926, ha resuelto, en un caso prácticamente idéntico al presente, que la utilización de ambas cláusulas es legal, pero rehusó alterar la moderación de la pena dictada por el tribunal de instancia.

En el caso de autos no se colocó al Tribunal Superior en condiciones de estimar el grado procedente de moderación de la pena y éste acertadamente no la atenuó. No consta en autos si la máquina compaginadora llegó a venderse y por cuánto. Se ignora la diferencia, si alguna, entre el precio de venta, si ésta ocurrió, y el valor que hubiese tenido la propiedad al finalizar el plazo de arrendamiento pactado. Se sabe que la máquina valía al momento de su arrendamiento $4,650 y que en Puerto Rico se recibió una oferta de solo doscientos dólares por ella después del incumplimiento del contrato por la arrendataria. La arrendataria no ofreció prueba en el juicio sobre los daños que le pudiesen haber causado las actuaciones de la arrendadora. Tampoco exploró si la arrendadora recibió una ganancia excesiva o sentó, como era su obligación, las bases para solicitar la moderación de la pena. En tales circunstancias no hay base en el récord para alterar la sentencia.

■ Para clarificación ulterior de las pautas a regir en campo tan activo debemos, no obstante, añadir lo siguiente. Aunque cada caso debe estudiarse en sus méritos, la utilización conjunta por un acreedor de una variedad de remedios análogos a los presentes en el caso de arrendamiento de bienes muebles, a distinción de su uso separado, envuelve una operación arriesgada, ya que dicha situación normalmente representa la utilización de una cláusula penal y está sujeta a la doctrina de la moderación de la pena. Esta última doctrina, además, es en extremo lata. El margen de discreción que se les concede a los tribunales de instancia en este tipo de controversia es amplio y los tribunales apelativos en España y Francia, interpretando textos idénticos al de nuestro Código Civil, rehusan de ordinario intervenir con el ejercicio de dicha discreción. Está establecido que la moderación de la pena no debe llegar al punto de requerirle al acreedor que devuelva lo recibido en exceso al daño sufrido, 8 Manresa, *Código Civil Español*, 1967, pág. 574, pero en determinadas situaciones la pena puede reducirse a muy poco más de esa base. Con el movimiento creciente hacia una mayor protección del consumidor en diversas partes del mundo no es de extrañar que ocurra un acercamiento cada vez mayor entre los principios del derecho común y el derecho civil en este campo. Nada de lo anterior significa, por supuesto que, al optar bajo un contrato por un remedio dado, el acreedor no pueda tomar las medidas necesarias para el aseguramiento de la sentencia y la minimización de los daños.

*Se confirmará la sentencia de que se recurre.*