# 2000 DTA 114

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL II-BAYAMON
PANEL II**

MARIA M. RIOS RIOS
Recurrida

v.

EFRAIN LOPEZ SANTIAGO
Peticionario

Núm. KLCE-99-01007

San Juan, Puerto Rico, a 29 de febrero de 2000

Panel integrado por su Presidente, el Juez Gierbolini,
el Juez Cordero y la Jueza Hernández Torres

Cordero, Juez Ponente

**TEXTO COMPLETO DE LA SENTENCIA**

El Sr. Efraín López Santiago *("López")* nos solicita que revisemos la resolución dictada por el Tribunal de Primera Instancia, Sala Superior de Bayamón, en relación con el caso civil número DPE970678 (503). El tribunal aprobó estipulación de las partes y emitió sentencia el 26 de agosto de 1998, condenando a López a pagar $2,500.00 en o antes del 26 de octubre de 1998. El 3 de marzo de 1999, el tribunal ordenó a López pagar

$2,500.00 adicionales, según lo acordado mediante una cláusua penal, ante su incumplimiento con lo estipulado. La cláusula penal en cuestión fue acordada entre las partes y formó parte de la sentencia dictada por el Tribunal de Primera Instancia el 26 de agosto de 1998.

Por las razones expuestas adelante, se expide el recurso solicitado y se confirma la resolución recurrida.

# I

El 12 de agosto de 1997, la Sra. María M. Ríos Ríos *("Ríos),* presentó una querella por despido injustificado bajo el procedimiento especial de la Ley Núm. 2 del 17 de octubre de 1961, según enmendada, 32 L.P.R.A. sec. 3118, *et seq.*

Por su parte, López presentó su contestación a la querella el 6 de febrero de 1998, en la que negó que hubiese despedido a Ríos. No obstante, luego de utilizar los mecanismos de descubrimiento de prueba, las partes anunciaron al Tribunal de Primera Instancia que habían llegado a un acuerdo de transacción. El tribunal, a pesar de que las partes acordaron poner el acuerdo por escrito, lo acogió de inmediato y dictó sentencia el 26 de agosto de 1998.

El acuerdo a que llegaron las partes limitó la reclamación de Ríos a la suma de $2,500.00. Esta suma se pagaría en un término de sesenta (60) días, en o antes del 26 de octubre de 1998, por conducto de la oficina del representante legal de Ríos. Además, se añadió como parte de este acuerdo, una cláusula penal que disponía el pago de una suma adicional de $2,500.00, en la eventualidad de que la suma acordada no se pagara dentro del término establecido.

El 18 de noviembre de 1998, López presentó ante el Tribunal de Primera Instancia una *"Moción de Solicitud de Prórroga para Cumplir con Acuerdo"*. En dicha moción, López argumentó que debido al paso del Huracán *"Georges"* por la Isla, su oficina se mantuvo cerrada por espacio de un mes sin generar ingresos. El Tribunal de Primera Instancia ordenó a la parte querellante, aquí recurrida, expresar su posición en 10 (diez) días a partir del 21 de enero de 1999, fecha de la notificación del tribunal. Ríos, por su parte, presenta una moción el 1ro. de febrero de 1999, solicitando que se declarara sin lugar la moción de prórroga por haber tenido López tiempo suficiente para satisfacer la deuda.

El 12 de febrero de 1999, López presentó un escrito titulado *"Moción sobre Satisfacción de Pago de Sentencia por Consignación"*, en la que alegó lo siguiente: 1) que las partes habían llegado a un acuerdo basado en una transacción; 2) que las normas generales de la interpretación de los contratos son aplicables a la interpretación de esta transacción, en específico la doctrina de *rebus sic stantibus;* 3) debido al paso del Huracán *"Georges"* por Puerto Rico, la capacidad de pago de López se afectó, por lo que procedía la revisión del acuerdo entre las partes para que no fuera tan oneroso; y 4) que diera por satisfecha la obligación y cumplida la sentencia luego del depósito de $2,500.00.

El 3 de marzo de 1999, el Tribunal de Primera Instancia dictó orden con respecto a la *"Moción sobre Satisfacción de Pago de Sentencia por Consignación"* aceptando los $2,500.00 a favor de Ríos, pero no aceptó que se hubiese pagado la totalidad de la sentencia.

Insatisfecho con la decisión del tribunal, López presentó una *"Moción de Reconsideración a Orden"* el 12 de marzo de 1999. En dicha moción, la cual fue acogida por el tribunal, López solicitó que se atemperara la cláusula penal y que se revisara el acuerdo de transacción. El Tribunal de Primera Instancia declaró sin lugar la misma el 23 de agosto de 1999.

López acude ante este Tribunal para que se expida auto de *certiorari* para revisar la resolución del Tribunal de Primera Instancia y señala la comisión de los siguientes errores:

"1. Erró el Tribunal de Primera Instancia al no considerar la transacción de acuerdo a la doctrina de rebus sic stantibus", habiendo ocurrido unos hechos posteriores a la transacción que imposibilitaron el fiel cumplimiento de la misma, sin que mediara culpa o mala fe de la parte querellada.

2. Erró el Tribunal de Primera Instancia al no atemperar lo estipulado en la cláusula penal y dejar sin efecto o reducir lo que ésta disponía, tomando en cuenta que López había cumplido con la parte sustancial de la estipulación."

## II

El Código Civil define la transacción como un contrato por el cual las partes, dando, prometiendo o reteniendo cada una alguna cosa, evitan la provocación de un pleito o ponen término al que habían comenzado. 31 L.P.R.A. sec. 4821. Una estipulación dentro de un procedimiento judicial que pone fin a un pleito entre las partes es, en esencia, un contrato de transacción. *Suc. Román v. Shelga Corp.*, 111 D.P.R. 782, 786787 (1981).

Nuestro Tribunal Supremo estableció en *Carmen M. Igaravidez López v. Lester Iván Ricci*, **98 J.T.S. 143**, a la pág. 251, la diferencia entre una transacción judicial y una extrajudicial. Nos dice el Tribunal Supremo que estamos ante un contrato de transacción extrajudicial, si antes de comenzar un pleito, las partes interesan eliminar la controversia mediante un acuerdo o si, aún estando el pleito pendiente, las partes acuerdan una transacción sin la intervención del tribunal. *Id.* En el caso de que la controversia degenere en un pleito y luego de éste haber comenzado, las partes acuerdan eliminar la controversia y solicitan incorporar el acuerdo al proceso en curso, estamos ante un contrato de transacción judicial, el cual tiene el efecto de terminar el pleito. *Id.*

El artículo 1715 del Código Civil, 31 L.P.R.A. sec. 4827, establece el principio de que la transacción tiene, para las partes, el efecto de cosa juzgada. Esto significa que las partes tienen que considerar los puntos discutidos como definitivamente resueltos y no pueden volver nuevamente sobre éstos. *Carmen M. Igaravidez López v. Lester Iván Ricci, supra,* a la pág. 251. También significa que la transacción judicial es la única que tiene fuerza para abrir la vía de apremio, es decir, pedir la ejecución como si se tratare de una sentencia firme. Por tanto, existe una gran diferencia en cuanto a la manera de poder llevar a la práctica lo convenido en transacción, según sea ésta extrajudicialmente o judicial. La judicial puede llevarse a efecto por los trámites de la ejecución de las sentencias; mientras que la extrajudicial sólo puede hacerse cumplir cuando se haya declarado su eficacia en el juicio correspondiente. Espin Cánovas, Manual de Derecho Civil Español, V. III, Bosh, 1985, a la pág. 734; *Neca Mortgage Corporation v. A & W Developers S.E.,* ___ D.P.R. ___ (1995), **95 J. T.S. 10**, a la pág. 604.

En caso de incumplimiento por una de las partes, puede precisarse la intervención judicial para procurar que la transacción rinda su finalidad esencial de dirimir las controversias en la forma convenida. *Carmen M. Igaravidez López v. Lester Iván Ricci, supra,* a la pág. 251. En ese caso, nos dice el Tribunal Supremo que *"cuando se trata de una transacción judicial, si una de las partes incumple con lo estipulado, se puede solicitar inmediatamente que lo convenido se lleve a efecto, pues tiene para las partes la misma fuerza que la sentencia firme, y se puede, por lo tanto, utilizar el procedimiento de apremio."* Id.

En el caso ante nos, la transacción acordada entre López y Ríos es una judicial. Por tanto, de acuerdo con lo antes expuesto, lo acordado por las partes tiene el efecto de cosa juzgada. No procede aplicarle a la transacción judicial en el caso de autos la doctrina de *rebus sic stantibus,* por lo que no erró el Tribunal de Primera Instancia en su determinación.

López señala, como segundo error, que el Tribunal de Primera Instancia debió atemperar lo estipulado en la cláusula penal para que se dejara sin efecto o redujera lo que ésta disponía. López añade que el tribunal debió tomar en consideración las dificultades económicas que alegadamente sufrió tras el paso del Huracán *"Georges"* y el hecho de que ya había cumplido con la parte sustancial de la estipulación. No le asiste la razón.

Veamos.

El artículo 1042 del Código Civil, 31 L.P.R.A. sec. 2992, establece que *"las obligaciones nacen de la ley, los contratos y los cuasicontratos ...."*. Además, el artículo 1044, 31 L.P.R.A. sec. 2994, establece que *"las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes y deben cumplirse al tenor de los mismos."*

No obstante, el artículo 1207, 31 L.P.R.A. sec. 3372, establece que *"los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público."*

Nuestro ordenamiento jurídico, en materia de contratos, reconoce las obligaciones con cláusula penal. *R.C. Leasing Corp. v. Williams Int., Ltd.,* 103 D.P.R. 163, 168 (1974). Una cláusula de este tipo consiste en una garantía del derecho de crédito. La doctrina la ha definido como una *"estipulación de carácter accesorio, establecida en un contrato, con la finalidad de asegurar el cumplimiento de la obligación principal, en virtud de la que el deudor de la prestación que se trata de garantizar, viene obligado a pagar por lo general determinada cantidad de dinero."* *Levitt & Sons of P.R., Inc. v. D.A.C.O.,* 105 D.P.R. 184, 193 (1976). Por tanto, los efectos de una cláusula penal sólo se producirán si se incumple con la obligación principal. J. Puig Brutau, Fundamentos de Derecho Civil, Tomo I, Vol. II, Bosh, Barcelona, 4ta. ed., 1988, a la pág. 451. El incumplimiento total, parcial, defectuoso o tardío por parte del obligado *"aparece como la conditio juris que provocará la eficacia de la cláusula penal."* Puig Brutau, *supra,* a las págs. 451-452.

La cláusula penal cumple con dos funciones importantes: asegurar el cumplimiento de una obligación y evaluar por anticipado los perjuicios que habrían de ocasionar al acreedor el incumplimiento o el cumplimiento inadecuado de la obligación. *Simonet v. Igaravidez,* 90 D.P.R. 1, 9 (1964); *R. C. Leasing Corp. v. Williams Int. Ltd.,* supra, a la pág. 169; y *Levitt & Sons of P.R.., Inc. v. D.A.C.O.,* supra, a la pág. 193.

Por otro lado, el artículo 1108 del Código Civil, 31 L.P.R.A. sec. 3133, establece que *"el Tribunal o Juez modificará equitativamente la pena cuando la obligación principal hubiera sido en parte o irregularmente cumplida por el deudor."* Sin embargo, según nuestro Tribunal Supremo, la facultad concedida por el artículo 1108 a los tribunales de poder modificar una cláusula penal, tiene que ser utilizada por éstos con gran cautela y notoria justificación. *Jack's Beach Resort, Inc. v. Cía. de Turismo,* 112 D.P.R. 344, 350 (1982). El Tribunal Supremo añade que procede el uso de esta facultad, solamente cuando se demuestre que existe una desproporción evidente entre la penalidad establecida en la cláusula y la intensidad del perjuicio causado a la otra parte contratante por motivo del cumplimiento inadecuado de la obligación principal. *Jack's Beach Resort v. Cía. de Turismo,* supra, a las págs. 350-352; y *WRC Props., Inc. v. Santana,* 116 D.P.R. 127, 138 (1985).

Como un remedio en equidad contra el rigor o la excesiva onerosidad de la cláusula penal, el Código Civil provee la modificación de la pena en el texto de su artículo 1108: *"El Tribunal o Juez modificará la pena cuando la obligación principal hubiera sido en parte o irregularmente cumplida por el deudor."* 31 L.P.R.A. sec. 3133. Según ha establecido el Tribunal Supremo, la modificación de la pena cuando están presentes las circunstancias contempladas por dicho precepto, es un deber y no una facultad. *Jack's Beach Resort v. Cía de Turismo,* supra, a la pág. 351.

No obstante, no se trata de eliminar la efectividad de la cláusula penal, sino de modificarla equitativamente con arreglo a las circunstancias que concurran en cada caso. Cualquier norma en contrario tendría el efecto de incidir con el principio de autonomía contractual. *Mun. de Ponce v. Gobernador,* 136 D.P.R. ___ (1994), **94 J. T.S. 112,** a la pág. 72. Como señaló nuestro Tribunal Supremo en *Jack's Beach Resort, Inc. v. Cía de Turismo,* supra, a la pág. 350:

*"La facultad judicial de moderación debe usarse sólo con gran cautela y notoria justificación. (S. de 13*

*junio, 1944.) Al resultado de frenar el predominio absoluto de la autonomía de la voluntad, bien moderando los efectos de los contratos, ya limitando su obligatoriedad según normas de buena fe, ha de llegarse únicamente en circunstancias extraordinarias, como medio de templar su excesiva onerosidad para el obligado o la desorbitada desproporción. Bonet Ramón, Código Civil Comentado, 2da. ed., 1964, a la pág. 959."*

Surge del recurso ante nuestra consideración que las partes establecieron una fecha en la que se activaría la cláusula penal convenida. Llegada esa fecha, sería exigible la pena estipulada. En nuestro caso, López cumplió su prestación luego de transcurrido el período de dos (2) meses fijado en la transacción judicial. Su retraso le permite a Ríos pedir la ejecución de la pena convenida. M. Albaladejo García, Comentarios al Código Civil y Compilaciones Forales, Tomo XV, Vol. 2 EDERSA, Madrid, 1983, a la pág. 473. En realidad, lo que intenta López es enmendar una sentencia que ya se había convertido en final y firme, utilizando conceptos y doctrinas inaplicables al caso ante nos.

Finalmente, el Tribunal de Primera Instancia, en el ejercicio de su sana discreción, decidió no atenuar la cláusula penal convenida. Luego de escuchar los argumentos de la parte afectada por dicha cláusula, el tribunal le ordenó a López el pago adicional de $2,500.00 contemplado en la misma. De haber procedido de otra manera, el foro *a quo* hubiese dejado impune la violación de un deber jurídico y se hubiese privado de eficacia la sentencia final y firme, según lo estipulado por las partes. Obviamente, no abuse de su discreción el foro recurrido.

Por tanto, a base del análisis anterior, concluimos que la determinación de instancia fue correcta.

**III**

Por los fundamentos antes expuestos, se expide el auto de *certiorari* y se confirma el dictamen recurrido.

Lo acuerda y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General